

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ELIONA DE LA FUENTE FLORES, Individually, and as the sole heir of the Estate of VICENTE LA FUENTE, deceased, </br></br>Plaintiff, </br></br>vs. </br></br>THE DRUG ENFORCEMENT ADMINISTRATION OF THE UNITED STATES, </br></br>Defendant. | Case No. 04 C 5037 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Eliona de La Fuente ("De La Fuente"), on her own behalf and as the sole heir, beneficiary, and distributee of her late husband, Vicente La Fuente ("Vicente"), has sued for the return of $495,820.00 in United States currency that was seized in February 2003 by the United States Drug Enforcement Administration. She claims Vicente was the owner of the funds, which were seized from his employee in Chicago, Illinois. De La Fuente contends that the government failed to comply with the statutory provisions of 18 U.S.C. § 983(a), part of the Civil Asset Forfeiture Reform Act of 2000, and should therefore be barred from taking any further action to effect the forfeiture of the currency. Alternatively, she asks the Court to set aside the administrative declaration of forfeiture pursuant to § 983(e) due to the government's failure to provide Vicente, an interested party, with the notice that she contends was required by § 983(a) and the Due Process Clause of the Fifth Amendment. The government has filed, as a counter

claim, a complaint seeking forfeiture of the funds.

This case is before the Court on the DEA's motion to dismiss De La Fuente's complaint.[1] For the reasons stated below, the Court denies the DEA's motion.

## Facts

On February 5, 2003, the DEA seized $495,820.00 in United States currency from Hector Ramos-Maldonado pursuant to 21 U.S.C. § 881(a)(6), which authorizes the government to forfeit funds that are the proceeds of or otherwise traceable to an illegal narcotics transaction. At the time of the seizure, Ramos-Maldonado was riding in an automobile in Chicago. He was questioned by the DEA agents, but no arrest was made, and no criminal charges have been filed in connection with the arrest or the funds seized. According to Ramos-Maldonado, he informed the DEA agents that the money belonged to his employer, Vicente, and gave them Vicente's contact information. The government admits that Ramos-Maldonato identified Vicente as his boss (or former boss) and owner of the funds but contends that he did not provide an address or telephone number for Vicente. Govt'sVerified Comp. for Forfeiture at ¶ 12.

De La Fuente claims that the funds seized belonged to her late husband, Vicente, who died intestate in Mexico in November, 2003. The De La Fuente's are Mexican citizens and have resided in Coahuila, Mexico at all times material to this dispute. According to De La Fuente, Vicente had earlier used the $495,820.00 to purchase a container of cigarettes and a container of electronic equipment from Jose Maria Lopez, a citizen of Mexico. But when Lopez was unable

---

[1] In reciting the facts, the Court has included a handful of items not specifically alleged in the complaint that the parties have discussed. These items are all consistent with the allegations of the complaint and thus are properly considered in addressing the motion to dismiss. *See, e.g., Hart v. Sheahan,* __ F.3d __, 2005 WL 221963, at *6 (7th Cir. Feb. 1, 2005).

2

to provide him with the containers, Vicente asked for a return of the purchase price. Lopez told Vicente he would need to pick up the money in Chicago, so Vicente sent Ramos-Maldonado, a long-time trusted employee, to retrieve the money. Pl's Am. Compl. ¶¶ 4 & 5.

The government maintains that the money was used for and intended to facilitate a violation of the Controlled Substances Act, 21 U.S.C., § 841, *et seq.*, and is therefore subject to forfeiture. Govt's Verified Compl. for Forfeiture ¶¶ 4, 17. The DEA sent a written "Notice of Seizure" dated July 2, 2003 to Ramos-Maldonado, informing him that procedures were underway to administratively forfeit the funds. *See* Pl's Mem. in Support of Summary Judgment, Ex. 3. The notice provided that Ramos-Maldonado could contest the forfeiture by filing a claim with the DEA's Forfeiture Counsel by August 6, 2003. The DEA also published notice of the seizure in *The Wall Street Journal*, although it is unclear when and for how long this notice was run. De La Fuente's complaint suggests that the publication notice established May 21, 2003 as the deadline for filing a claim applicable to individuals who did not receive personal notice. Pl's Am. Verified Compl. ¶ 6.

It is undisputed that the DEA did not send Vicente a written Notice of Seizure. Nevertheless, on August 5, 2003, Vicente filed a claim under oath for the return of the property seized. De La Fuente contends that Vicente did not have knowledge of the seizure, or at least of the intention to seek forfeiture, prior to learning of Ramos-Maldonado's Notice of Seizure. Pl's Resp. at 14.

On July 30, 2004, De La Fuente filed her complaint with the Court. She brings suit both on her own behalf and as representative of Vicente's estate. De La Fuente first contends that in accordance with 18 U.S.C. § 983(a)(3)(B), the government should be barred from taking any

action to effect the civil forfeiture of the funds because it failed to institute a judicial forfeiture proceeding within 90 days of the date Vicente filed his claim. If the Court determines that Vicente's claim was untimely, De La Fuente seeks to have the forfeiture declared void on the ground that the DEA's notice to Vicente violated his due process rights and failed to comply with the notice requirements set out in § 983(a). Finally, De La Fuente contends that if the Court does not determine that the claim was timely filed or that the forfeiture is void, it should nevertheless set aside the declaration of forfeiture without prejudice pursuant to 18 U.S.C. § 983(e), on the ground that the government failed to provided Vicente, a party entitled to written notice, with written notice of the nonjudicial forfeiture.

The government seeks to dismiss De La Fuente's amended complaint, arguing that she cannot bring a claim under § 983(a) because Vicente did not file a timely claim, and that her claim fails under § 983(e), which the government maintains is the exclusive remedy available to De La Fuente, because she has not alleged that Vicente was unaware of the seizure. On October 26, 2004, the government filed a verified complaint for forfeiture with the Court.

## Discussion

### 1. Standing

The government contends that Eliona De La Fuente lacks standing to bring a claim contesting the forfeiture, as the funds in issue belonged to her late husband.[2] It argues that there is nothing within § 983 that provides that De La Fuente can step into her husband's shoes for the purpose of seeking to set aside the forfeiture. In response, De La Fuente asserts that she is

---

[2] The government does not argue that Vicente De La Fuente would not have standing to bring this suit himself if he were alive.

properly before the Court as a representative of her husband's estate. The parties have not briefed this issue adequately, and as a result there is insufficient information before the Court to determine definitively that De La Fuente is a proper representative of the estate.[3] Accordingly, the Court will not at this time dismiss the complaint based on lack of standing. The question of standing needs to be addressed promptly, however. At the upcoming status hearing, the parties should be prepared to discuss the manner in which the issue should be addressed.

Because the government argues that De La Fuente's claim fails even if she has standing, the Court will address the merits of the government's motion to dismiss.

### 2.  Motion to Dismiss

Dismissal of a claim under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). For purposes of a motion to dismiss, the Court accepts the plaintiff's allegations as true and draws reasonable inferences in the plaintiff's favor. *Zemke v. City of Chicago*, 100 F.3d 511 (7th Cir. 1999).

#### a.  18 U.S.C. § 983(a)

Federal law authorizes forfeiture of the proceeds of illegal narcotics transaction and funds intended to be furnished in exchange for illegal narcotics. 21 U.S.C. § 881(a). The forfeiture

---

[3] In federal court, "every action [must] be prosecuted in the name of a real party in interest." Fed. R. Civ. P. 17(a). Rule 17(b) provides that the capacity of an individual to sue is determined by the law of the individual's domicile, while the capacity of one suing as a representative is governed by the law of the state in which the district court is sitting. *Id.* Thus, if De La Fuente is suing solely in a representative capacity, Illinois law governs. The well established rule in Illinois is that "the executor or administrator of a decedent's estate has standing to file suit on behalf of the decedent, but the legatees, heirs and devisees have no such standing." *McGill v. Lazzaro*, 92 Ill. App. 3d 393, 395, 416 N.E.2d 29, 31 (1980); *see also Abiola v. Abubakar*, No. 02 C 6093, 2003 WL 22012220, at *2-3 (N.D. Ill. Aug. 25, 2003). Whether or not De La Fuente is authorized to serve as executor or administrator of her husband's estate presumably turns on Mexican law, as both husband and wife are Mexican citizens and Vicente died intestate in Mexico.

5

statute incorporates forfeiture procedures from the customs laws. *Id.* § 881(d). Civil forfeiture is also subject to the provisions of the Civil Asset Forfeiture Reform Act of 2000, codified at 18 U.S.C. § 983.

Under the customs laws, when property worth under $500,000 is seized, the agency that seized the property is required is required to send written notice "to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a). CAFRA requires written notice "to interested parties, ... sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure," with certain exceptions not applicable here. 18 U.S.C. § 983(a)(1)(A)(i). CAFRA also requires that "[i]f the identity or interest of a party is not determined until after the seizure or turnover but is determined before a declaration of forfeiture is entered, notice shall be sent to the interested party not later than 60 days after the determination by the Government of the identity of the party or the party's interest." *Id.* § 983(a)(1)(A)(v).

Besides sending written notice to interested parties of whom it is aware, the seizing agency is also required to publish notice of the seizure and its intention to forfeit the property for at least three weeks, in the manner required by regulation. 19 U.S.C. § 1607(a). The applicable DEA regulation requires notice of the seizure and intention to forfeit to be published weekly for at least three weeks in a newspaper of general circulation in the judicial district in which the forfeiture proceeding is brought. The notice must describe the property seized as well as the time, cause, and place of the seizure and must state that any person desiring to claim the property may, within a specified period, file a claim with the agency. 21 C.F.R. § 1316.75. If no claim is filed, the agency is to declare the property forfeited. 19 U.S.C. § 1609(a).

As noted earlier, De La Fuente's complaint includes an allegation suggesting that the DEA published notice of the seizure in *The Wall Street Journal* establishing a deadline of May 21, 2003 to file a claim. Pl's Am. Compl. ¶ 6. But even though the DEA had seized the currency from Ramos-Maldonado, thus entitling him to written notice, De La Fuente alleges that the agency did not provide Ramos-Maldonado with such notice until July 2, 2003. *Id.* ¶ 7. That notice, according to De La Fuente, gave Ramos-Maldonado until August 6, 2003 to file a claim. *Id.* ¶ 9. Thus administrative forfeiture could not take place until August 6, when Ramos-Maldonado's deadline expired. Though Ramos-Maldonado did not submit a claim, De La Fuente alleges that Vicente sent a claim to the DEA on August 4, 2003, which the agency received on August 5, 2003, before a declaration of forfeiture occurred. *Id.* ¶ 9. The claim identified Vicente's interest in the property and requested its return.

CAFRA provides that the government "shall file a complaint for forfeiture" in an appropriate court not less than 90 days after a claim has been filed. *Id.* § 983(a)(3)(A). If the government does not, within that time, file a complaint or obtain an indictment containing an allegation that the property is subject to forfeiture, "the Government shall release the property ..., and may not take any further action to effect the civil forfeiture of such property ...." *Id.* § 983(a)(3)(B).

As noted earlier, De La Fuente's complaint includes a claim under § 983(a)(3)(B). She alleges that the government did not file a complaint for forfeiture within 90 days after receiving Vicente's claim and thus must release the currency without taking further action to effect forfeiture. The government argues that Vicente's claim was untimely and that an untimely claim does not trigger the government's obligation under § 983(a)(3)(A) to file a forfeiture complaint.

7

The government contends that the time for Vicente to make a claim expired on May 21, 2003, the deadline set in the notice that had been published in *The Wall Street Journal*. It argues that if Vicente is permitted to bypass that deadline, it would effectively require the government to file a forfeiture suit whenever a claim to seized property was filed, no matter how untimely the claim was.

The Court agrees with the government's premise but disagrees with its conclusion. First of all, when § 983(a)(3)(B) says that the government shall file a forfeiture complaint "[n]ot later than 90 days after a claim has been filed," it implicitly means only a *timely* claim. A reading of the statute that would require the government to file suit any time it receives a claim, no matter how untimely, or risk of losing the ability to forfeit the funds, would impose undue burdens on both the government and the courts.

But that does not mean that the government is entitled to dismissal of De La Fuente's claim under § 983(a)(3)(B), for the claim that Vicente submitted to the DEA may well have been timely. The plain language of CAFRA obligates the government to provide written notice to a person arises when the government determines the identity or interest of a party after the seizure but before a declaration of forfeiture. 18 U.S.C. § 983(a)(1)(A)(v). The statute does not impose any limitation on the ways in which the government may be deemed to determine a party's interest or identity. Thus, Vicente's filing of a claim on August 5 may have been sufficient to entitle him to written notice of the government's intent to forfeit the currency. If so, his claim was timely and triggered an obligation on the government's part to file suit within 90 days. For these reasons, the government is not entitled to dismissal of De La Fuente's claim under § 983(a)(3)(B).

Contrary to the government's suggestion, this reading of the statute imposes no undue or unfair burden on the government. If Vicente's claim had not come in until after the declaration of forfeiture had been made, it would not have entitled him to written notice of the intent to forfeit. Under § 983(a)(1)(A)(v), the government's obligations to notify additional parties terminate once a declaration of forfeiture is made. What the government suggests is an inappropriate extension of Vicente's claim deadline occurred only because the DEA did not give Ramos-Maldonado written notice of its intention to forfeit the property until nearly five months after the currency was seized, even though CAFRA unambiguously required it do so within 60 days after the seizure. 18 U.S.C. § 983(a)(1)(A)(i). If the government had provided Ramos-Maldonado with timely notice (that is, by April 7, 2003), his claim deadline would have expired by the time of the deadline set in the notice published in *The Wall Street Journal*, and the declaration of forfeiture could have and would have taken place long before Vicente filed his claim. In short, the delay is entirely attributable to the government's own action in failing to provide prompt written notice to Ramos-Maldonado.

Finally, the Court addresses De La Fuente's argument that the forfeiture is void because the government provided Vicente with deficient notice in violation of his due process rights. Prior to the enactment of CAFRA, the circuits were split over whether a forfeiture effectuated without providing parties with notice comporting with due process requirements should be held "void" or "voidable." *See Longenette v. Krusing*, 322 F.3d 758, 765 (3d Cir. 2003). The Seventh Circuit adopted the rule that a forfeiture effectuated under such circumstances is void. *See Garcia v. Meza*, 235 F.3d 287, 290 (7th Cir. 2000). The adoption of CAFRA, however, resolved the circuit split by supplying a remedy under § 983(e) to set aside a forfeiture due to

inadequate notice. CAFRA makes it clear that this provision is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. § 983(e)(5). Thus, if the Court determines that Vicente's claim was untimely for the purpose of invoking the remedies available under § 983(a), De La Fuente's sole remedy available for the purported due process violations is to set aside the forfeiture pursuant to § 983(e).

### b. 18 U.S.C. § 983(e)

De La Fuente contends that even if she does not prevail on her § 983(a)(3)(B) claim, the declaration of forfeiture should be set aside pursuant to § 983(e), without prejudice to the right of the government to commence a subsequent forfeiture proceeding. *See id.* § 983(e)(2)(A).

Section 983(e) provides that "any person entitled to written notice in any nonjudicial civil forfeiture proceeding . . . who does not receive such notice may file a motion to set aside a declaration of forfeiture." *Id.* § 983(e)(1). The motion will be granted if (1) the government knew or reasonably should have known of the moving party's interest, yet failed to provide the party with notice, and (2) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim. *Id.* § 983(e)(1)(A) & (B).

The government contends that De La Fuente cannot state a claim for relief under this section because she has not sufficiently alleged that Vicente did not know or have reason to know of the seizure within sufficient time to file a timely claim. De La Fuente's assertions regarding Vicente's knowledge of the seizure are somewhat inconsistent. In her amended complaint, De La Fuente states that Ramos-Maldonado informed Vicente that "after he picked up the money, persons identifying themselves as DEA agents detained him for a substantial period of time . . . and seized the money." Pl's Am. Verified Compl. ¶ 5. But De La Fuente does not identify when

10

this conversation took place, and thus the Court cannot say it occurred in time for Vicente to file a timely claim.

In De La Fuente's response to the government's motion to dismiss, she states "that [Vicente's] knowledge of the seizure of the funds was only provided upon [Vicente] receiving notice through the 'Notice of Seizure' provided to Ramos-Maldonado." Pl's Resp. at 14. She goes on to explain that because Vicente was a citizen of Mexico and unfamiliar with the actions and procedures of law enforcement agencies in the United States, prior to the Notice of Seizure he knew only that "a group of men purportedly took the funds at issue" from Ramos-Maldonado. *Id.* Thus, he was unaware that the government was going to attempt to actually seize and forfeit the funds. *Id.* at 14-15.

Because the Court must construe the plaintiff's allegations liberally on a motion to dismiss, we cannot say that De La Fuente can prove no set of facts that would sustain a claim under § 983(e). The Court therefore denies the government's motion to dismiss that claim.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss plaintiff's first amended verified complaint [docket no. 7]. The government is directed to answer the first amended complaint within 10 days of this order. The parties are directed to confer regarding a discovery schedule. A telephone conference to be initiated by the parties, will be held on March 4, 2005 at 9:00 a.m. for the purpose of setting a schedule for dealing with the standing issue,

and for completing discovery and filing dispositive motions.

                                                _____
                                                   MATTHEW F. KENNELLY
                                                   United States District Judge

Date: February 14, 2005